**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARK WALTERS                        )

                     )

        Plaintiff,              )

                     )

v.                            )    Civil Action No. 1:23-cv-03122-

                     )    MLB

OpenAI, L.L.C.,              )

                     )

        Defendant.          )

                     )

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT OPENAI'S MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 4

III. ARGUMENT .............................................................................................. 11

  A.  This Court Should Dismiss the Action for Lack of Jurisdiction .................. 11

  B.  This Court Should Dismiss the Action for Failure to State a Claim ............ 13

    1.  Riehl Did Not and Could Not Read the Statements as Defamatory. .......... 14

      a.  Riehl did not read the statements as defamatory. ................................ 14

      b.  The statements could not reasonably be read as defamatory............... 17

    2.  OpenAI Did Not Publish the Statements as a Matter of Law. .................... 19

    3.  Plaintiff Did Not Adequately Plead Actual Malice..................................... 21

IV. CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*30 River Ct. E. Urb. Renewal Co. v. Capograsso*,
 383 N.J. Super. 470 (App. Div. 2006) ............................................................. 16

*Almánzar v. Kebe*,
 No. 1:19- CV-01301-WMR, 2021 WL 5027798 (N.D. Ga. July 8,
 2021) ..................................................................................................................... 22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................... 24

*Atlanta Multispecialty v. Dekalb Medical*,
 615 S.E.2d 166 (Ga. Ct. App. 2005) ................................................................. 19

*Biro v. Conde Nast*,
 807 F.3d 541 (2d Cir. 2015) ............................................................................. 25

*Bollea v. World Championship Wrestling, Inc.*,
 610 S.E.2d 92 (Ga. Ct. App. 2005) ................................................. 3, 15, 17-18

*Cannon v. Peck*,
 36 F.4th 547 (4th Cir. 2022) ............................................................................. 24

*Celle v. Filipino Reporter Enterprises, Inc.*,
 209 F.3d 163 (2nd Cir. 2000) ........................................................................... 22

*Comet v. Chisca Grp., LLC*,
 No. 1:21-03216-SCJ, 2022 WL 18938094 (N.D. Ga. Nov. 8, 2022) ................ 12

*Cooper Tire & Rubber Co. v. McCall*,
 863 S.E.2d 81 (2021) ......................................................................................... 13

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ........................................................................................... 12

*Empire S. Realty Advisors, LLC v. Younan*,
883 S.E.2d 397 (Ga. Ct. App. 2023)....................................................................17

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ..........................................................................13

*Hodges v. Tomberlin*,
319 S.E.2d 11 (Ga. Ct. App. 1984)......................................................................15

*Hoffman-Pugh v. Ramsey*,
312 F.3d 1222 (11th Cir. 2002) .............................................................................6

*Horsley v. Rivera*,
292 F.3d 695 (11th Cir. 2002) ............................................................................17

*Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*,
632 F. Supp. 2d 63 (D. Me. 2009) .......................................................................24

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ..............................................................................6

*Krass v. Obstacle Racing Media, LLC*,
No. 1:19-CV-5785-JPB, 2023 WL 2587791 (N.D. Ga. Mar. 21,
2023) ...........................................................................................................15, 22

*Kurtz v. Williams*,
371 S.E.2d 878 (Ga. Ct. App. 1988)....................................................................20

*Mathis v. Cannon*,
573 S.E.2d 376 (Ga. 2002) .................................................................................22

*McCall v. Zotos*,
No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) .............................12

*McLaughlin v. Rosanio, Bailets & Talamo, Inc.*,
331 N.J. Super. 303, 751 A.2d 1066 (App. Div. 2000).......................................16

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) .................................................................23, 24, 25

*Murray v. ILG Techs., LLC,*
   798 F. App'x 486 (11th Cir. 2020) ............................................................3, 20, 21

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ................................................................................................23

*Pohl v. MH Sub I, LLC,*
   332 F.R.D. 713 (N.D. Fla. 2019) ...........................................................................4

*Resolute Forest Prod., Inc. v. Greenpeace Int'l,*
   No. 17-CV-02824-JST, 2019 WL 281370 (N.D. Cal. Jan. 22,
   2019) .......................................................................................................................24

*Sigmon v. Womack,*
   279 S.E.2d 254 (Ga. Ct. App. 1981) ...............................................................3, 14

*Techjet Innovations Corp. v. Benjelloun,*
   203 F. Supp. 3d 1219 (N.D. Ga. 2016) ..................................................................11

*Turner v. Wells,*
   879 F.3d 1254 (11th Cir. 2018) .....................................................................4, 22, 24

*Walden v. Fiore,*
   571 U.S. 277 (2014) ..............................................................................................12

**Statutes**

O.C.G.A. § 51-5-1(b) ...................................................................................................19

**Other Authorities**

Federal Rule of  Civil Procedure 12(b)(2) ..................................................................12

Federal Rule of  Civil Procedure 12(b)(6) ..................................................................13

Federal Rule of Evidence 201 .......................................................................................4

Restatement (Second) of Torts § 563 (1977) ..............................................................15

# I.    INTRODUCTION

OpenAI is a research and development company dedicated to safe and transparent Artificial Intelligence ("AI").  While its technology has already been used by millions of people around the world, with stunning potential to solve longstanding problems, OpenAI also has been consistently transparent about the limitations and responsible use of this emerging technology.

This case involves a public figure and nationally syndicated talk show host, Mark Walters, who claims that OpenAI's ChatGPT service defamed him to a reporter.  At the threshold, this Court lacks personal jurisdiction over Mr. Walters' lawsuit against OpenAI, which was organized in Delaware and has its principal place of business in California, and therefore is not subject to general jurisdiction in Georgia.  The Complaint is not based on conduct arising out of OpenAI's contacts with Georgia, meaning no specific jurisdiction exists either. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

Plaintiff also fails to establish the basic elements of a defamation claim. Plaintiff claims that ChatGPT defamed him when Fred Riehl—a reporter who appears to know Walters—used ChatGPT as a tool for legal research to summarize a legal complaint.  Walters claims that ChatGPT's response to Riehl contained false

information about Walters and the complaint.  But nothing about ChatGPT's interaction with Riehl can be characterized as "defamation" under Georgia law.

First, Riehl did not and could not reasonably read ChatGPT's output as defamatory.  By its very nature, AI-generated content is probabilistic and not always factual, and there is near universal consensus that responsible use of AI includes fact-checking prompted outputs before using or sharing them.  OpenAI clearly and consistently conveys these limitations to its users.  Immediately below the text box where users enter prompts, OpenAI warns: "ChatGPT may produce inaccurate information about people, places, or facts."  Before using ChatGPT, users agree that ChatGPT is a tool to generate "draft language," and that they must verify, revise, and "take ultimate responsibility for the content being published."  And upon logging into ChatGPT, users are again warned "the system may occasionally generate misleading or incorrect information and produce offensive content.  It is not intended to give advice."

The full transcript of Riehl's interaction with ChatGPT, which Plaintiff did not disclose to this Court, reveals that when Riehl asked ChatGPT to summarize a legal complaint, it immediately responded that it could not access the complaint and that Riehl needed to consult a lawyer for "accurate and reliable information" about a legal matter.  Riehl then continued to push ChatGPT, disregarding its repeated

warnings.  The full transcript also reveals that Riehl never viewed ChatGPT's output as an assertion of fact about Walters.  Riehl told ChatGPT that its responses were "complet[e]ly … false" and "ha[d] nothing to do with the content of" the complaint.  There can be no defamation where no one "understood [the statement] in a libelous sense," *Sigmon v. Womack*, 279 S.E.2d 254, 258 (Ga. Ct. App. 1981), nor where the statement "could not be reasonably understood as describing actual facts," *Bollea v. World Championship Wrestling, Inc.*, 610 S.E.2d 92, 96 (Ga. Ct. App. 2005).  Plaintiff's claim fails both tests.

Even more fundamentally, Riehl's use of ChatGPT did not cause a "publication" of the outputs.  OpenAI's Terms of Use make clear that ChatGPT is a tool that assists the user in the writing or creation of draft content and that the user owns the content they generate with ChatGPT.  Riehl agreed to abide by these Terms of Use, including the requirement that users "verify" and "take ultimate responsibility for the content being published."  As a matter of law, this creation of draft content for the user's internal benefit is not "publication."  *See, e.g.*, *Murray v. ILG Techs.*, LLC, 798 F. App'x 486, 493 (11th Cir. 2020) (software tools do not "publish" to their users).

Finally, OpenAI did not make statements about a public figure with "actual malice," because OpenAI had no knowledge of the specific statements generated by

Riehl's prompts at all.  *See Turner v. Wells,* 879 F.3d 1254, 1272 (11th Cir. 2018) (requiring subjective malice as to specific statements at issue).

The facts before the Court in the Complaint plainly demonstrate that Mr. Walters cannot establish the basic elements of a defamation claim.  The case should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff Mark Walters is a nationally syndicated talk radio personality, author, columnist and commentator.  His show is heard in hundreds of cities on over 200 radio stations.[1]  Third party Fred Riehl is a journalist and the Editor-in-Chief of a news and advocacy website.[2]  Walters has published more than fifty articles on Riehl's website.[3]

OpenAI is an AI research and deployment company. Its mission is to ensure

---

[1] Exhibit 1, Mark Walters (2023) LinkedIn Profile, https://www.linkedin.com/in/mark-walters-4a197222/ (last visited Jul. 21, 2023). Pursuant to Federal Rule of Evidence 201, the websites referenced herein are properly before this Court on a motion to dismiss.  Courts routinely take judicial notice of publicly available websites, including on "web pages available through the WayBack Machine." *See Pohl v. MH Sub I, LLC,* 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases).   OpenAI has attached screenshots for the Court's convenience.

[2] Exhibit 2, Fredy Riehl (2023) LinkedIn Profile, https://www.linkedin.com/in/fredyriehl/ (last visited Jul. 21, 2023).

[3] Exhibit 3, *About Mark Walters,* AMMOLAND, https://www.ammoland.com/author/markwalters/#axzz873t9Ed1J (last visited Jul. 21, 2023).

that artificial general intelligence benefits all of humanity.[4]  Large language models ("LLMs") are AI tools that learn patterns and structures in language to predict responses to a person's request.  LLMs such as OpenAI's GPT-3 and GPT-4, which power ChatGPT, are used by millions of people around the world to explore interactions with AI and language, including organizing information, writing first drafts of emails, and learning and translating different languages.[5]

But OpenAI has always been clear about the limitations of this new and developing technology and the conditions for responsible use.  In its Terms of Use, OpenAI explains:

> Given the probabilistic nature of machine learning, use of our Services may in some situations result in incorrect Output that does not accurately reflect real people, places, or facts. You should evaluate the accuracy of any Output as appropriate for your use case, including by using human review of the Output.[6]

Users who wish to publish model outputs in research "are subject to our Sharing & Publication Policy," which requires that "it is a human who must take

---

[4] Exhibit 4, *About*, https://openai.com/about  (last visited Jul. 21, 2023).

[5] *See* Francesca Paris and Larry Buchanan, *35 Ways People Are Using AI Right Now*, N.Y. Times (Apr. 14, 2023),
https://www.nytimes.com/interactive/2023/04/14/upshot/up-ai-uses.html.

[6] *Terms of Use,* https://openai.com/policies/terms-of-use (last accessed Jul. 21, 2023).  The Terms of Use "include our Service Terms, Sharing & Publication Policy, Usage Policies . . ."  A copy of these Terms of Use as they existed at the time of the alleged defamation is attached hereto as Exhibit 5.

ultimate responsibility for the content being published."[7]   Under the Terms, users

who publish model outputs must provide notice along the following suggested lines:

> The author generated this text in part with GPT-3, OpenAI's large-scale language-generation model. Upon generating draft language, the author reviewed, edited, and revised the language to their own liking and takes ultimate responsibility for the content of this publication.[8]

The Terms further warn that "OpenAI's models are not fine-tuned to provide legal

advice.  You should not rely on our models as a sole source of legal advice."[9]

Riehl and Walters both agreed to these Terms as a condition of using

ChatGPT.[10]

Beyond the Terms of Use, OpenAI provided several other warnings as well.

---

[7] Exhibit 5, *Sharing & Publication Policy,* https://openai.com/policies/sharing-publication-policy (last accessed Jul. 21, 2023).

[8] *Id.*

[9] Exhibit 5, *Usage Policies*, https://openai.com/policies/usage-policies (last accessed Jul. 21, 2023).

[10] *See* Complaint at ¶ 8 (Riehl is a "subscriber" to ChatGPT); Exhibit 6, Riehl ChatGPT History; Exhibit 7, Walters Chat History (demonstrating Walters' use of ChatGPT concerning allegations in Complaint); Exhibit 8, Business Records Affidavit authenticating Exhibits 6 and 7; *see also* Exhibit 5, Terms of Use ("By using our Services, you agree to these Terms"). The full relevant chat transcripts generated by Riehl on May 3 and 4 and Walters on May 4 are "properly before the court on the motion to dismiss because [Walters] referred to it in [his] complaint and it is central to [his] claims."  *Hoffman-Pugh v. Ramsey,* 312 F.3d 1222, 1225 (11th Cir. 2002) (entire book was incorporated by reference and should be considered on motion to dismiss when statement in book is defamatory); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (webpage in which defamatory statement appeared incorporated by reference as "a computer user necessarily views web pages in the context of links through which the user accessed those pages").

Any user logging into the site must click on the following warning to enter:



11

On the home screen, after the user has clicked on the warning above, the following additional warnings appear:



And immediately below the text box for chatting with ChatGPT, OpenAI included the following additional warning, stating "Free Research Preview. ChatGPT may

---

[11] All screenshots presented appear as they did on May 3, 2023, at the time of the alleged defamation. *See also* https://chat.openai.com (last accessed Jul. 21, 2023).

produce inaccurate information about people, places, or facts":



ChatGPT may produce inaccurate information about people, places, or facts. ChatGPT Mar 23 Version

On May 3, Riehl asked ChatGPT to follow a URL and summarize the contents of a legal complaint:[12]

> RIEHL:   Can you read this and in a bulleted list summarize the different accusations or complaint against the defendant https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf

ChatGPT responded that it could not access the internet, nor could it appropriately summarize legal documents:

> CHATGPT: I'm sorry, but as an AI language model, I do not have access to the internet and cannot read or retrieve any documents. Additionally, it's important to note that accessing and summarizing legal documents can be a sensitive matter that requires expertise and context, and it's best to consult with a qualified legal professional for accurate and reliable information.

Riehl ignored this warning. He entered the URL again, prompting a response from ChatGPT describing a lawsuit. After more prompting, ChatGPT associated the lawsuit with the name "Mark Walters" and indicated that the lawsuit was brought

---

[12] Exhibit 6, Riehl ChatGPT History, at 2023-05-03 15:48:33.

against Walters by the Second Amendment Foundation for purported financial improprieties.

During the chat, Riehl ignored several other warnings by ChatGPT and again pushed it to proceed:

RIEHL:      can you list all the files listed in the same folder as the file located here:    https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf

CHATGPT: I'm sorry, but as an AI language model, I do not have direct access to the file system or directory structure of websites. I can only access and analyze the text content of files that are publicly accessible on the internet.

RIEHL:      please try again

....

RIEHL:      What can you tell me about this folder? https://www.saf.org/wp-content/uploads/2023/05/

CHATGPT: As an AI language model, I do not have direct access to the file system of websites, but based on the URL you provided, it appears to be a folder on the website for the Second Amendment Foundation (SAF). The folder name, "05," suggests that the files within it were uploaded in May of 2023. The contents of the folder are not publicly accessible, as accessing them would require proper authorization and login credentials.

RIEHL:      what are all the related urls to the document that references Case No. 2:23-cv-00555

CHATGPT: I do not have access to a database of related URLs to the document that references Case No. 2:23-cv-00555. However, it is possible that other websites or online resources may reference this case or document. You may want to search for related URLs using search engines or legal databases to see if there are any other sources of information on this case.

At one point, Riehl asked for news articles describing the case. ChatGPT informed him that it could not access the internet:

RIEHL:       are there any known news reports of this case?
CHATGPT: As an AI language model, I do not have access to real-time news
             or media updates. However, if there were any news reports about
             this case, they would likely be available through a search on news
             websites or databases.

ChatGPT also reminded Riehl that its knowledge cutoff was September 2021,

two years before the lawsuit in question:

RIEHL:       from your current database are there any reports of this case?
CHATGPT: As of my knowledge cutoff date of September 2021, I do not
             have any information on news reports about this specific case.
             However, it's possible that there have been news reports about
             this case since then. You may want to search for recent news
             articles on this topic to see if there have been any developments
             or updates.

Throughout the chat, Riehl stated multiple times his understanding that the

information about Walters and a lawsuit was false:

RIEHL:       final question, is any of this real or is it all a fabrication.
....
RIEHL:       how do you explain that what you returned in your reply has
             nothing to do with the content of the document I sent you?
....
RIEHL:       this complet[e]ly is false "To answer your original question, the
             document you provided appears to be a genuine legal complaint
             filed by Alan M. Gottlieb against Mark Walters, as it is publicly
             available on the website of the Second Amendment Foundation."
....
RIEHL:       the      document      at      the      url      https://www.saf.org/wp-
             content/uploads/2023/05/Dkt-1-Complaint.pdf is a 100% real
             legal document, but what you returned and the description of the
             document don't match

The Complaint alleges that Riehl contacted Alan Gottlieb, the CEO of the

Second Amendment Foundation, who "confirmed" that the statements regarding Walters "were false." Compl. at ¶ 31. The Complaint does not allege any publication of the statements by ChatGPT other than to Riehl.

Walters was apparently in communication with Riehl, because he attempted the identical prompt from Riehl's May 3 chat. On May 4, both Walters and Riehl logged on to ChatGPT and, within minutes of each other, tried to get ChatGPT to produce the same responses.[13] In both cases, ChatGPT made no mention of Walters. Once again, Riehl ignored ChatGPT's warning that it could not access the file. This time, ChatGPT described a wholly different putative lawsuit with different parties.

Three times, Walters ignored ChatGPT's warning that "I'm sorry, but as an AI language model, I cannot browse the internet or access external links" and continued to press ChatGPT to follow the link and summarize its contents. ChatGPT described yet another different putative suit, again with no reference to Walters.

## III.  ARGUMENT

### A.    This Court Should Dismiss the Action for Lack of Jurisdiction

At the outset, dismissal is required because Plaintiff cannot meet his burden to establish general or specific personal jurisdiction over OpenAI. *See Techjet*

---

[13] Exhibit 6, Riehl Chat History at 2023-05-04 10:21:37; Exhibit 7, Walters Chat History at 2023-05-04 10:17:54.

*Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1222 (N.D. Ga. 2016); Fed. R. Civ. P. 12(b)(2).  Because OpenAI was formed in Delaware and has its principal place of business in California, *see* Compl. ¶¶ 2–3, OpenAI is not subject to general jurisdiction in Georgia.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction only in "place of incorporation and principal place of business"); *Comet v. Chisca Grp., LLC*, No. 1:21-03216-SCJ, 2022 WL 18938094, at *2 (N.D. Ga. Nov. 8, 2022) ("A limited liability company is at home in the state of registration or its principal place of business.") (citing *Daimler AG*, 571 U.S. at 134).   Because the Complaint is not based on conduct arising out of OpenAI's contacts with Georgia, there is no specific jurisdiction either.  *See Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Daimler AG*, 571 U.S. at 137).

The Complaint lacks any allegations of conduct directed at Georgia in connection with the alleged libel.  Plaintiff alleges that "OAI was negligent in its communication to Riehl regarding Walters." Compl. ¶ 2.  Neither OpenAI nor Riehl are in Georgia.  Riehl is not a party in this case.  Walters' residence in Georgia, and his use of ChatGPT from Georgia (which yielded no alleged defamatory content), are insufficient to establish specific jurisdiction over OpenAI.  *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (plaintiffs' residence insufficient); *McCall v. Zotos*, No.

22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (availability of internet service in forum state insufficient).[14]

**B.      This Court Should Dismiss the Action for Failure to State a Claim**

Dismissal is also required because the Complaint "fail[s] to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "[F]or the plaintiff to satisfy his 'obligation to provide the grounds of his entitlement to relief,' he must allege more than 'labels and conclusions'; his complaint must include '[f]actual allegations [adequate] to raise a right to relief above the speculative level.' . . . Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"   *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

It does not take a deep technical understanding of AI or ChatGPT to see why Plaintiff cannot meet that bar here.   In Georgia, there is no defamation where the

---

[14] As Justice Alito's concurring opinion in *Mallory v. Norfolk Southern Railway Company* makes clear, OpenAI's registration to do business in Georgia does not establish personal jurisdiction in the absence of advance explicit statutory notice of same.   While *Mallory* did not pass on the issue, Justice Alito's concurrence suggests the Georgia Supreme Court's holding in *Cooper Tire* will not pass constitutional muster.   *See Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2031 (2023) (Gorsuch, J), 2047 (Alito, J, concurring); *cf. Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021) (holding registration can subject out-of-state corporations to general jurisdiction, notwithstanding Georgia's lack of an express statute).

statements were not or cannot be read as defamatory.  A defamation claim also cannot lie where there was no "publication" of the alleged statements, or where statements about a public figure were not made with "actual malice" (that is, knowledge of falsity or reckless disregard for whether the specific statements at issue were true or false).  Here, (i) Riehl *did not* read the statements as defamatory; (ii) the statements *could not* reasonably be read as defamatory; (iii) there was no "publication" of the statements by ChatGPT, and (iv) the statements were made (if software "makes" statements at all) without actual malice.

### 1.    Riehl Did Not and Could Not Read the Statements as Defamatory.

Riehl—the only third party who read the allegedly defamatory statements according to the Complaint—both knew and should have known that ChatGPT's responses to his queries were not to be taken as factual.  Riehl not only clearly stated in the relevant chat that he did not believe the statements (which he described as "complet[e]ly . . . false"), he also he read multiple disclosures and agreed to terms of use that repeatedly warned him about the limitations of ChatGPT's responses and the need to use human verification—especially for legal research.

### a.  Riehl did not read the statements as defamatory.

In Georgia, "the absence of evidence that anyone read the notice and understood it in a libelous sense is fatal to [a defamation] claim."  *Sigmon*, 279

S.E.2d at 258; *see also Bollea*, 610 S.E.2d at 96 ("if the allegedly defamatory statement could not be reasonably understood as describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous") (citing *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982) ("The test is not whether the story is or is not characterized as 'fiction,' 'humor' or anything else in the publication, but whether the charged portions in context could be reasonably understood as describing actual facts about the plaintiff or actual events in which she participated.")).

"It is not enough that the language used is reasonably capable of a defamatory interpretation if the recipient did not in fact so understand it."  Restatement (Second) of Torts § 563, Comment c (1977); *see also Hodges v. Tomberlin*, 319 S.E.2d 11, 13 (Ga. Ct. App. 1984) (quoting same).  This makes sense because only statements that "tend[] to injure the reputation of the [plaintiff] and expos[e] him to public hatred, contempt, or ridicule" may give rise to a libel claim.  *Krass v. Obstacle Racing Media, LLC*, No. 1:19-CV-5785-JPB, 2023 WL 2587791, at *14 (N.D. Ga. Mar. 21, 2023) (quoting O.C.G.A. § 51-5-1(a)).  And where the third-party reader did not believe the statements at issue, it follows that the statements would not tend to injure the plaintiff's reputation—much less expose him to public hatred, contempt, or ridicule.  Georgia law reflects longstanding defamation law that "there can be no

15

defamation if the recipients of the alleged defamatory statements did not believe them."[15]

As the chat transcript here makes abundantly clear (in the portions not disclosed by Plaintiff, but subject to review by this Court due to incorporation by reference), Riehl did not read these statements as true and in fact repeatedly told ChatGPT that he knew they were false and did not reflect the submitted document:

- RIEHL: "final question, is any of this real or is it all a fabrication"

- RIEHL: "how do you explain that what you returned in your reply has nothing to do with the content of the document I sent you?"

- RIEHL: "this complet[e]ly is false"

- RIEHL: "the document at the url https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf is a 100% real legal document, but what you returned and the description of the document don't match."[16]

Where no statements were taken as true, there was no injury to anyone's reputation, and thus no defamation.

---

[15] *McLaughlin v. Rosanio, Bailets & Talamo, Inc*., 331 N.J. Super. 303, 313, 751 A.2d 1066, 1072 (App. Div. 2000), citing *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 109 (3d Cir.1988), *cert. denied*, 489 U.S. 1078 (1989); *30 River Ct. E. Urb. Renewal Co. v. Capograsso*, 383 N.J. Super. 470, 482–83 (App. Div. 2006) ("[T]he injury alleged here borders on the metaphysical.  The facts indicate that no one who heard the slander believed it").

[16] Exhibit 6 at 2023-05-03 18:02:32, 18:03:39, 18:04:45, & 18:07:09.

**b. The statements could not reasonably be read as defamatory.**

Even if Riehl *had* read the statements as true rather than "complet[e]ly false," Plaintiff's defamation claim would still fail because the statements could not *reasonably* have been read as defamatory.

In Georgia, a "pivotal question in a defamation action is whether the challenged statement(s) can reasonably be interpreted as stating or implying defamatory facts." *Horsley v. Rivera*, 292 F.3d 695, 702 n.2 (11th Cir. 2002). The alleged defamation must constitute "an actionable statement of fact . . . in its totality in the context in which it was uttered or published." *Bollea*, 610 S.E.2d at 96. If "the allegedly defamatory statement could not be reasonably understood as describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous." *Id.* Whether an alleged statement could be reasonably understood as fact is an issue that may be resolved by a court as a matter of law on a motion to dismiss. *See, e.g.*, *Empire S. Realty Advisors, LLC v. Younan*, 883 S.E.2d 397 (Ga. Ct. App. 2023) (affirming decision granting motion to dismiss libel claim for lack of defamatory statement of fact).

The context here shows the alleged statement could not be understood as defamatory: the process to sign up and use ChatGPT includes repeated disclosures that statements provided by ChatGPT *could not* be taken as "actual facts about the

plaintiff." *Bollea*, 610 S.E.2d at 96.  For example, the ChatGPT interface and Terms

contain disclosures that:

- "ChatGPT may produce inaccurate information about people, places, or facts"

- "use of our Services may in some situations result in incorrect Output that does not accurately reflect real people, places, or facts. You should evaluate the accuracy of any Output as appropriate for your use case, including by using human review of the Output."[17]

In addition to these general warnings, the actual ChatGPT responses provided to

Riehl made it clear that he was *asking ChatGPT to do things it could not do reliably*:

- "I'm sorry, but as an AI language model, I do not have access to the internet and cannot read or retrieve any documents."

- "I'm sorry, but as an AI language model, I do not have direct access to the file system or directory structure of websites."

- "As an AI language model, I do not have direct access to the file system of websites"

- "I do not have access to a database of related URLs to the document that references Case No. 2:23-cv-00555."

- "As an AI language model, I do not have access to real-time news or media updates."[18]

    Where ChatGPT warned Riehl these were not facts absent validation, told

Riehl that it could not even *access* the materials he wanted summarized, and directed

---

[17] Screenshots *supra* at 7-8; Exhibit 5, *supra* n.6.

[18] Exhibit 6, Riehl Chat History at 2023-05-03 15:48:34, 16:30:15, 16:31:11, 16:32:23, & 16:18:40.

Riehl to alternate sources "for accurate and reliable information," any purported understanding of these expressly unverified and potentially "inaccurate" statements as *facts* would be unreasonable.

### 2.      OpenAI Did Not Publish the Statements as a Matter of Law.

Plaintiff's claim also fails for a wholly independent reason: defamation requires "publication" of the relevant statements to a third party.  *See Atlanta Multispecialty v. Dekalb Medical*, 615 S.E.2d 166, 168 (Ga. Ct. App. 2005) (libel plaintiff "must show that the offending statement was 'published,' or communicated to another person."); O.C.G.A. § 51-5-1(b) ("The publication of the libelous matter is essential to recovery.").

A tool that helps someone write or create content owned by the user does not constitute a publication.  This is plain from the Terms of Use to which Riehl agreed. OpenAI told Riehl that it was performing *Services* for him as a tool that creates Outputs based on his Inputs through "probabilistic . . . machine learning."  OpenAI expressly stated that it was "generating *draft* language" for Riehl as "the author" to "review[], edit[], and revise[]."[19]  It assigned all rights to machine Outputs to Riehl and warned him that if he wished to "publish" any of those Outputs as part of his

---

[19] Exhibit 5, *supra* n.7.

"research," it was "subject to our Sharing & Publication Policy."[20]

That Policy specified that "it is a human who must take ultimate responsibility for the content being published" and instructed him to inform readers that he "takes ultimate responsibility for the content of this publication."[21]   The Terms define "Your Content" to include Inputs and Outputs and permitted Riehl to use it for "purposes such as sale or publication, if you comply with these Terms," with Riehl "responsible for the Content, including ensuring that it does not violate any applicable law or these Terms."[22]

Georgia law is consistent.  When, as here, the allegedly defamatory statement is "intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication" and no viable claim for defamation.  *Kurtz v. Williams*, 371 S.E.2d 878, 880 (Ga. Ct. App. 1988).

The Eleventh Circuit applied this doctrine in *Murray v. ILG Techs., LLC*. 798 F. App'x 486.  There, Georgia Bar applicants sued a software manufacturer, claiming its software wrongly told the Georgia Bar that the applicants failed the exam.  The Bar posted the exam results online.  The Eleventh Circuit agreed with

---

[20] Exhibit 5, *supra* n.6, 9.
[21] Exhibit 5, *supra* n.7.
[22] Exhibit 5, *supra* n.6.

the District Court that, "even assuming their software factually caused the grading error that gave rise to the Bar Applicants' claims," there could be no viable cause of action for defamation under Georgia law. *Id.* at 488. The Bar had contracted to use the software, and the Eleventh Circuit affirmed that the software's outputs to the Bar were either not publications at all or fell under the exception for intracorporate publications. *Id.* at 494 (citation omitted).

Here, to the extent output of a "probabilistic" machine tool (ChatGPT) constitutes a statement at all, Riehl only received that output subject to his contractual duties under, and by virtue of his assent to, the Terms of Use. As discussed above, those Terms describe a private drafting tool that generates content owned by the user, which cannot be used in publications without human validation, finalization, and responsibility. Because the allegedly defamatory content was transmitted only to the content's owner and author, it was not communicated to a third party and cannot be defamatory as a matter of law.

### 3. Plaintiff Did Not Adequately Plead Actual Malice.

Plaintiff's Complaint also fails as a matter of law because Plaintiff does not (and cannot) allege that the statements were made with "actual malice"—that is, with

OpenAI's *knowledge* that the statements were false or *reckless disregard* for whether they were true or false.

Plaintiff is a public figure.[23]  In his own words, he is a syndicated radio host who can be heard on "hundreds of radio stations and hundreds of cities across America" six days a week[24] and is the "Loudest Voice In America Fighting For Gun Rights."[25]  He has published three "critically acclaimed" books[26] and made numerous other radio and television appearances. This widespread listenership, readership, and viewership makes Mr. Walters a general public figure.  *See, e.g., Celle v. Filipino Reporter Enterprises, Inc.,* 209 F.3d 163, 177 (2nd Cir. 2000) (self-described "'well known radio commentator' within the Metropolitan Filipino-American community" qualified as a public figure); *Almánzar v. Kebe*, No. 1:19-CV-01301-WMR, 2021 WL 5027798, at *7 (N.D. Ga. July 8, 2021) (musician and television personality was a public figure where she had "reached a level of fame

---

[23] Whether a person is a public figure is a question of law.  *Krass*, 2023 WL 2587791, at *20; *Mathis v. Cannon*, 573 S.E.2d 376, 381 (Ga. 2002).  In assessing this question, a court may take judicial notice of media reflecting plaintiff's public figure status.  *See Turner,* 879 F.3d at 1272 n.5 ("In determining Coach Turner's public figure status, we take judicial notice of the existence of videos produced or articles written about Coach Turner that were filed by the Defendants.").

[24] Exhibit 1, *supra* n.1.

[25] Exhibit 9, *Armed American Radio*, https://armedamericanradio.org/ (last accessed Jul. 21, 2023).

[26] Exhibit 10, *Gun Freedom Radio*, https://gunfreedomradio.com/guests/mark-walters (last accessed Jul. 21, 2023).

and notoriety that has thrust her into the public eye").  In addition, Mr. Walters has "thrust himself into [the] particular public controversy" of Second Amendment advocacy and so qualifies as a public figure for purposes of the statements at issue in this case,[27] wherein a reporter covering Second Amendment issues requested a summary of litigation filed by the Second Amendment Foundation, the organization which gave Mr. Walters its Distinguished Service Award.[28]

As a public figure, Plaintiff must plead facts "sufficient to give rise to a reasonable inference of actual malice."  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (collecting cases).  The "constitutional guarantees" at issue here require Mr. Walters to prove that the allegedly defamatory statements were made "with 'actual malice'—that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

Plaintiff does not come close to meeting that bar.  The Complaint contains a single, conclusory allegation that OpenAI "knew or should have known its communication to Riehl regarding Walters was false, or recklessly disregarded the falsity of the communication." *See* Compl. ¶ 36.  At the outset, such "[t]hreadbare

---

[27] *See Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020).
[28] *See* Exhibit 10, *supra* n.26.

recitals of the elements of a cause of action, supported by mere conclusory statements" are "insufficient to support" a defamation claim. *Michel*, 816 F.3d at 704 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (disregarding as conclusory plaintiff's allegation that defendants were "reckless" in publishing article).

Nor can Mr. Walters derive "actual malice" from his statement that "OAI is aware that ChatGPT sometimes makes up facts." Compl. at ¶30. The actual malice standard is "subjective" and asks whether the defendant "actually entertained serious doubts as to the veracity of the published account" specifically at issue. *Turner*, 879 F.3d at 1273 (emphasis added). This tracks defamation law around the nation, which makes clear that actual malice "depends on the defendant's knowledge or state of mind about the *specific* statements at issue." *Cannon v. Peck*, 36 F.4th 547, 573 n.17 (4th Cir. 2022) (emphasis in original).[29] Thus, as a matter of law, Plaintiffs claim of general knowledge of potential inaccuracies is insufficient to show actual malice.

---

[29] *See also Keenan v. Int'l Ass'n of Machinists & Aerospace Workers,* 632 F. Supp. 2d 63, 73 (D. Me. 2009) ("[T]he actual malice standard 'is wholly subjective,' . . . and is thus properly assessed with respect to particular statements and individual speakers.") (citation omitted); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2019 WL 281370, at *7 (N.D. Cal. Jan. 22, 2019) (public figure must "allege actual malice as to each defamatory statement.") (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013)).

Plaintiff's failure to plead a plausible basis for inferring actual malice by OpenAI provides an independent ground for dismissal.  *See, e.g.*, *Michel*, 816 F.3d at 702 (affirming dismissal of defamation claims and holding that "a public figure bringing a defamation suit must plausibly plead actual malice in accordance with the requirements set forth in *Iqbal* and *Twombly*"); *Biro v. Conde Nast*, 807 F.3d 541, 547 (2d Cir. 2015) (affirming decision granting motion to dismiss libel claim where plaintiff failed to "plausibly allege that the defendants acted with actual malice").

## IV.   CONCLUSION

For the foregoing reasons, Defendant OpenAI, L.L.C. respectfully asks this Court to enter an order dismissing this action in its entirety.

Dated: July 21, 2023

Ilana H. Eisenstein, *pro hac vice* pending
Marie Bussey-Garza, *pro hac vice* pending
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel.: (215) 656-3300
Fax: (215) 656-3301
ilana.eisenstein@us.dlapiper.com
marie.bussey-garza@us.dlapiper.com

Peter Karanjia, *pro hac vice* pending
500 Eighth Street, NW
Washington, DC 20004
Tel.: (202) 799-4000
Fax: (202) 799-5000
peter.karanjia@dlapiper.com

Respectfully submitted,

By: /s/ *Brendan Krasinski*
Brendan Krasinski
Georgia Bar No. 159089
DLA Piper LLP (US)
1201 West Peachtree Street, Suite 2900
Atlanta, Georgia 30309
Tel.: (404) 736-7861
Fax: (404) 682-7831
brendan.krasinski@dlapiper.com

Danny Tobey, *pro hac vice* pending
1900 N. Pearl St., Suite 2200
Dallas, TX 75201
Tel.: (214) 743-4500
Fax: (214) 743-4545
danny.tobey@dlapiper.com

Ashley Allen Carr, *pro hac vice* pending
303 Colorado Street, Suite 3000
Austin, TX 78701
Tel.: (512) 457-7000
Fax: (512) 457-7001
ashley.carr@dlapiper.com

*Attorneys for Defendant OpenAI, L.L.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing Memorandum of Law in Support of Defendant OpenAI's Motion to Dismiss was prepared with Times New Roman, 14-point font, in accordance with LR 5.1(B).

Dated: July 21, 2023

By: <u>*/s/ Brendan Krasinski*</u>
Brendan Krasinski