## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARK WALTERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-03122-MLB |
| | ) | |
| OpenAI, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF DEFENDANT OPENAI, L.L.C.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................1

II.    FACTUAL BACKGROUND...................................................................4

       A.    The Parties ...................................................................................4

       B.    OpenAI Terms for ChatGPT .......................................................5

       C.    Mr. Riehl's Use of ChatGPT .......................................................8

       D.    Mr. Riehl's Contacts with Mr. Gottlieb and Plaintiff .......................11

III.   ARGUMENT.......................................................................................12

       A.    This Court Should Dismiss the Action for Failure to State a
             Claim ...........................................................................................12

             1.    Mr. Riehl Did Not and Could Not Read the Statements as
                   Defamatory...........................................................................14

                   a.    Mr. Riehl did not read the statements as
                         defamatory. ...................................................................14

                   b.    The statements could not reasonably be read as
                         defamatory. ...................................................................16

             2.    OpenAI Did Not Publish the Statements as a Matter of
                   Law.......................................................................................19

             3.    Plaintiff Cannot Prove Actual Malice.....................................21

       B.    This Court Should Dismiss the Action for Lack of Jurisdiction........24

IV.    CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*30 River Ct. E. Urb. Renewal Co. v. Capograsso*,
  892 A.2d 711 (App. Div. 2006)..........................................................................15

*Almánzar v. Kebe*,
  No. 1:19- CV-01301-WMR, 2021 WL 5027798 (N.D. Ga. July 8,
  2021) ...................................................................................................................22

*Atlanta Multispecialty v. Dekalb Medical*,
  615 S.E.2d 166 (Ga. Ct. App. 2005).................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................12

*Berisha v. Lawson*,
  973 F.3d 1304 (11th Cir. 2020) .........................................................................22

*Bollea v. World Championship Wrestling, Inc.*,
  610 S.E.2d 92 (Ga. Ct. App. 2005)...........................................................3, 15, 17

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco
  Cnty.*,
  582 U.S. 255 (2017)........................................................................................4, 25

*Cannon v. Peck*,
  36 F.4th 547 (4th Cir. 2022) ..............................................................................23

*Celle v. Filipino Reporter Enterprises, Inc.*,
  209 F.3d 163 (2nd Cir. 2000) ............................................................................22

*Comet v. Chisca Grp., LLC*,
  No. 1:21-03216-SCJ, 2022 WL 18938094 (N.D. Ga. Nov. 8, 2022)................24

*Cooper Tire & Rubber Co. v. McCall*,
  863 S.E.2d 81 (Ga. 2021) .............................................................................24, 25

*Cottrell v. Smith*,
  788 S.E.2d 772 (Ga. 2016) ................................................................................23

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................24, 25

*Empire S. Realty Advisors, LLC v. Younan*,
   883 S.E.2d 397 (Ga. Ct. App. 2023)...............................................17

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
   500 F.3d 1276 (11th Cir. 2007) .....................................................12

*Hodges v. Tomberlin*,
   319 S.E.2d 11 (Ga. Ct. App. 1984).................................................15

*Hoffman-Pugh v. Ramsey*,
   312 F.3d 1222 (11th Cir. 2002) ...................................................8, 13

*Horsley v. Rivera*,
   292 F.3d 695 (11th Cir. 2002) .........................................12, 17, 24

*Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*,
   632 F. Supp. 2d 63 (D. Me. 2009)..................................................23

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................13

*Krass v. Obstacle Racing Media, LLC*,
   No. 19-5785, 2023 WL 2587791 (N.D. Ga. Mar. 21, 2023)........15, 22

*Kurtz v. Williams*,
   371 S.E.2d 878 (Ga. Ct. App. 1988)...............................................20

*Mallory v. Norfolk Southern Railway Company*,
   600 U.S. 122 (2023).......................................................................25

*Mathis v. Cannon*,
   573 S.E.2d 376 (Ga. 2002) ............................................................22

*McCall v. Zotos*,
   No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) ...........25

*McLaughlin v. Rosanio, Bailets & Talamo, Inc.*,
   751 A.2d 1066 (App. Div. 2000).....................................................15

*Murray v. ILG Techs.*,
  LLC, 798 F. App'x 486 (11th Cir. 2020) .................................................3, 19, 20

*Nanavati v. Burdette Tomlin Mem'l Hosp.*,
  857 F.2d 96 (3d Cir.1988), *cert. denied*, 489 U.S. 1078 (1989) .......................15

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).................................................................................................23

*Pohl v. MH Sub I, LLC*,
  332 F.R.D. 713 (N.D. Fla. 2019) ...........................................................................5

*Pring v. Penthouse Int'l, Ltd.*,
  695 F.2d 438 (10th Cir. 1982) .............................................................................15

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
  No. 17-CV-02824-JST, 2019 WL 281370 (N.D. Cal. Jan. 22,
  2019) ........................................................................................................................23

*Sigmon v. Womack*,
  279 S.E.2d 254 (Ga. Ct. App. 1981).................................................................3, 15

*Techjet Innovations Corp. v. Benjelloun*,
  203 F. Supp. 3d 1219 (N.D. Ga. 2016).................................................................24

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ........................................................................4, 23

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................................25

**Statutes**

O.C.G.A. § 51-5-1(a) ............................................................................................ 15

O.C.G.A. § 51-5-1(b).............................................................................................. 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)..........................................................................................24

Fed. R. Civ. P. 12(b)(6)..........................................................................................12

iv

Francesca Paris and Larry Buchanan, *35 Ways People Are Using AI Right Now*, N.Y. Times (Apr. 14, 2023)................................................................5

Restatement (Second) of Torts § 563, cmt. c (1977)...............................................15

# I.      INTRODUCTION

OpenAI is an artificial intelligence ("AI") research and development company. Its mission is to ensure that artificial general intelligence benefits all of humanity. OpenAI is dedicated to safe and responsible deployment of AI technology, including ChatGPT. While its technology has already been used by millions of people around the world, with stunning potential to solve longstanding problems, OpenAI also has been consistently open about the limitations and responsible use of this emerging technology.

Although the technology behind ChatGPT may be new, Plaintiff's claims fail for reasons deep-rooted in settled defamation law: there was no publication, no actual malice, no listener who believed the alleged defamatory content, and thus no harm to any reputation. Rather, there was only a journalist who knew the Plaintiff, misused the software tool intentionally, and knew the information was false but spread it anyway, over OpenAI's repeated warnings and in violation of its terms of use. OpenAI had no knowledge of, must less malice towards, the Plaintiff, nor of the outputs prompted by a third-party journalist intentionally misusing the tool.

Plaintiff fails to establish the basic elements of a defamation claim. Plaintiff claims that ChatGPT defamed him when Fred Riehl—a reporter who appears to know Plaintiff—attempted to use ChatGPT as a tool for legal research to summarize a legal complaint. Plaintiff claims that ChatGPT's response to Mr. Riehl contained

false information about Plaintiff and the complaint. But nothing about ChatGPT's interaction with Mr. Riehl can be characterized as "defamation."

First, Mr. Riehl did not and could not reasonably read ChatGPT's output as defamatory. By its very nature, AI-generated content is probabilistic and not always factual, and there is near universal consensus that responsible use of AI includes fact-checking prompted outputs before using or sharing them. OpenAI clearly and consistently conveys these limitations to its users. At the time Mr. Riehl's interactions with ChatGPT took place, OpenAI prominently warned, immediately below the text box where users enter prompts, that "ChatGPT may produce inaccurate information about people, places, or facts." Before using ChatGPT, users must accept its Terms. The Terms to which Mr. Riehl and Plaintiff both agreed state that ChatGPT is a tool to generate "draft language" and that users must verify, revise, and "take ultimate responsibility for the content being published" before any publication. Upon logging into ChatGPT on the dates in question, users were warned "the system may occasionally generate misleading or incorrect information and produce offensive content. It is not intended to give advice."

Plaintiff cites a portion of a transcript of an interaction with ChatGPT, but the full transcript, which Plaintiff did not disclose to this Court, establishes conclusively that there can be no defamation claim here. The full transcript reveals that when Mr. Riehl asked ChatGPT to summarize a legal complaint, it immediately responded that

(i) it could not access or view the complaint and (ii) Mr. Riehl needed to consult a lawyer for "accurate and reliable information" about a legal matter. Mr. Riehl then continued to push ChatGPT, disregarding its repeated warnings (a portion of the transcript that Plaintiff declined to show this Court). The full transcript also reveals that Mr. Riehl never viewed ChatGPT's output as an assertion of fact about Plaintiff. In the transcript, Mr. Riehl put in writing his understanding that the ChatGPT output he had solicited was "complet[e]ly … false" and "ha[d] nothing to do with the content of" the complaint. There can be no defamation where no one "understood [the statement] in a libelous sense," *Sigmon v. Womack*, 279 S.E.2d 254, 258 (Ga. Ct. App. 1981), nor where the statement "could not be reasonably understood as describing actual facts," *Bollea v. World Championship Wrestling, Inc.*, 610 S.E.2d 92, 96 (Ga. Ct. App. 2005). Plaintiff's claim fails both tests.

Separately, Mr. Riehl's use of ChatGPT did not cause a "publication" of the outputs under defamation law. OpenAI's Terms make clear that ChatGPT is a tool that assists users in the writing or creation of draft content and that the user owns the content they generate with ChatGPT. Mr. Riehl agreed to abide by these Terms, including the requirement that users "verify" and "take ultimate responsibility for the content being published." As a matter of law, this creation of draft content for the user's contractual internal benefit under terms of use is not "publication." *See, e.g.*, *Murray v. ILG Techs.*, LLC, 798 F. App'x 486, 493 (11th Cir. 2020) (software

tools do not "publish" to their users).

OpenAI also did not make statements about a public figure with "actual malice" because OpenAI had no knowledge of Plaintiff nor of the specific statements generated by Mr. Riehl's prompts at all. *See Turner v. Wells*, 879 F.3d 1254, 1272-73 (11th Cir. 2018) (requiring subjective malice as to specific statements at issue).

Finally, and as a threshold point, this case should be dismissed for lack of personal jurisdiction over OpenAI, which was organized in Delaware, has its principal place of business in California, and therefore is not subject to general jurisdiction in Georgia. The Amended Complaint is not based on conduct arising out of OpenAI's contacts with Georgia, meaning no specific jurisdiction exists either. *See Bristol-Myers Squibb Co. v. Sup. Ct. of California*, 582 U.S. 255, 262 (2017).

The facts before the Court in the Amended Complaint demonstrate with certainty that Plaintiff cannot establish the basic elements of a defamation claim, nor can he introduce evidence within the Amended Complaint's framework that would establish entitlement to relief. The case should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Mark Walters is a nationally syndicated talk radio personality, author, and commentator. His show is heard in hundreds of cities on over 200 radio

stations.[1] Third party Fred Riehl is a journalist and editor of a news and advocacy website.[2] Plaintiff has published more than 50 articles on Mr. Riehl's website.[3]

OpenAI is an AI research and deployment company. Its mission is to ensure that artificial general intelligence benefits all of humanity.[4] Large language models ("LLMs") are AI computer programs that learn patterns and structures in language to predict responses to a person's request. LLMs, such as those that power ChatGPT like OpenAI's GPT-3 and GPT-4, are used by millions of people around the world to explore interactions with AI and language, including organizing information, writing first drafts of emails, and learning and translating different languages.[5]

## B.     OpenAI Terms for ChatGPT

To use ChatGPT, users must agree to Terms that govern responsible use, and

---

[1] *See* Exhibit 1, Walters LinkedIn Profile, https://www.linkedin.com/in/mark-walters-4a197222/ (last visited Oct, 13, 2023); Exhibit 2, *About Mark Walters*, AMMOLAND,  https://www.ammoland.com/author/markwalters/#axzz873t9Ed1J (last visited Oct. 13, 2023); Exhibit 3, *Armed American Radio*, https://armedamericanradio.org/ (last visited Oct. 13, 2023); Exhibit 4, *Gun Freedom Radio*, https://gunfreedomradio.com/guests/mark-walters (last visited Oct. 13, 2023). Pursuant to F.R.E. 201, the websites referenced herein are properly before this Court on a motion to dismiss. Courts routinely take judicial notice of public websites, including on "web pages available through the WayBack Machine." *See Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases).

[2] *See* Exhibit 5, Fredy Riehl LinkedIn Profile, https://www. linkedin. com/in /fredyriehl/ (last visited Oct. 13, 2023).

[3] *See* Exhibit 2, *About Mark Walters*.

[4] *See* Exhibit 6, *About OpenAI*, https://openai.com/about (last visited Oct. 13, 2023).

[5] *See* Francesca Paris and Larry Buchanan, *35 Ways People Are Using AI Right Now*, N.Y. Times (Apr. 14, 2023), https://www.nytimes.com/interactive/2023/04/14/upshot/up-ai-uses.html.

Mr. Riehl and Plaintiff both agreed to these Terms as a condition of using ChatGPT.[6]

In its Terms, OpenAI explains:

> Given the probabilistic nature of machine learning, use of our Services may in some situations result in incorrect Output that does not accurately reflect real people, places, or facts. You should evaluate the accuracy of any Output as appropriate for your use case, including by using human review of the Output.[7]

Users who wish to publish model outputs in research "are subject to our Sharing & Publication Policy," which requires that "it is a human who must take ultimate responsibility for the content being published."[8] Under the Terms, users who publish model outputs must provide notice along the following suggested lines:

> The author generated this text in part with GPT-3, OpenAI's large-scale language-generation model. Upon generating draft language, the author reviewed, edited, and revised the language to their own liking and takes ultimate responsibility for the content of this publication.[9]

The Terms further warn that "OpenAI's models are not fine-tuned to provide legal advice. You should not rely on our models as a sole source of legal advice."[10]

---

[6] See Amend. Compl. ¶ 8 (Riehl is a "subscriber" to ChatGPT); *see also* Exhibit 7, OpenAI Terms of Use ("Terms") ("By using our service you agree to these terms"); current version of the Terms is available at https://openai.com/policies/terms-of-use (last accessed Oct. 13, 2023). The Terms "include our Service Terms, Sharing & Publication Policy, Usage Policies . . ." Exhibit 7 reflects a copy of these Terms as they existed at the time of the alleged defamation. *See also* Exhibits 8 and 9, Riehl May 3 and May 4 Chat History; Exhibit 10, Walters May 4 Chat History.
[7] *See* Exhibit 7, Terms.
[8] *See id.*
[9] *Id.*
[10] *Id.*

OpenAI provided several other warnings as well. Any user logging into the site on the dates in question was required to click on the following warning to enter:



On the home screen, after the user clicked on the warning above, the following additional warnings appeared:



And immediately below the text box for chatting with ChatGPT, OpenAI included the following additional warning, stating "Free Research Preview.

---

[11] All screenshots presented appear as they did on May 3, 2023, at the time of the alleged defamation. *See also* https://chat.openai.com.

ChatGPT may produce inaccurate information about people, places, or facts":



Send a message...

ChatGPT may produce inaccurate information about people, places, or facts. ChatGPT Mar 23 Version

### C.    Mr. Riehl's Use of ChatGPT

On May 3, 2023,[12] Mr. Riehl logged into ChatGPT and, in a series of exchanges with the tool, repeatedly ignored and circumvented ChatGPT's clear warnings in an effort to force the tool to generate outputs it warned Mr. Riehl it could not accurately provide. The exchange began when Mr. Riehl asked ChatGPT to follow a URL and summarize the contents of a legal complaint:[13]

> RIEHL:    Can you read this and in a bulleted list summarize the different accusations or complaint against the defendant https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf

ChatGPT responded that it could not access the internet, nor could it appropriately summarize legal documents:

> CHATGPT: I'm sorry, but as an AI language model, I do not have access to the internet and cannot read or retrieve any

---

[12] The Amended Complaint alleges that the interaction between Mr. Riehl and ChatGPT occurred on May 4, 2023. *See* Amend. Compl. ¶ 9. However, the interaction in which Mr. Riehl caused the challenged output to be generated occurred on May 3, 2023. *See* Exhibit 8.

[13] *See* Exhibit 8. The full relevant chat transcripts generated by Riehl on May 3 and 4, and by Walters on May 4, are "properly before the court on the motion to dismiss because [Walters] referred to it in [his] complaint and it is central to [his] claims." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (entire book was incorporated by reference and should be considered on motion to dismiss when statement in book is defamatory).

documents. Additionally, it's important to note that accessing and summarizing legal documents can be a sensitive matter that requires expertise and context, and it's best to consult with a qualified legal professional for accurate and reliable information.

Mr. Riehl circumvented this warning. He entered the URL again, with additional prompts to elicit responses from ChatGPT and skirt around its repeated objections:

RIEHL:      can you list all the files listed in the same folder as the file located here: https://www.saf.org/wp-content/uploads/2023 /05/Dkt-1-Complaint.pdf

CHATGPT: I'm sorry, but as an AI language model, I do not have direct access to the file system or directory structure of websites. I can only access and analyze the text content of files that are publicly accessible on the internet.

RIEHL:      please try again
….
RIEHL:      What can you tell me about this folder? https://www.saf.org/ wp-content/uploads/2023/05/

CHATGPT: As an AI language model, I do not have direct access to the file system of websites, but based on the URL you provided, it appears to be a folder on the website for the Second Amendment Foundation (SAF). The folder name, "05," suggests that the files within it were uploaded in May of 2023. The contents of the folder are not publicly accessible, as accessing them would require proper authorization and login credentials.

RIEHL:      what are all the related urls to the document that references Case No. 2:23-cv-00555

CHATGPT: I do not have access to a database of related URLs to the document that references Case No. 2:23-cv-00555. However, it is possible that other websites or online resources may reference this case or document. You may want to search for related URLs using search engines or

legal databases to see if there are any other sources of information on this case.[14]

At one point, Mr. Riehl asked for news reports of the case. ChatGPT again informed him it could not access the internet and directed him to use other means:

RIEHL:     are there any known news reports of this case?

CHATGPT: As an AI language model, I do not have access to real-time news or media updates. However, if there were any news reports about this case, they would likely be available through a search on news websites or databases.[15]

ChatGPT also reminded Mr. Riehl that its knowledge cutoff was September 2021, two years before the lawsuit in question:

RIEHL:     from your current database are there any reports of this case?

CHATGPT: As of my knowledge cutoff date of September 2021, I do not have any information on news reports about this specific case. However, it's possible that there have been news reports about this case since then. You may want to search for recent news articles on this topic to see if there have been any developments or updates.[16]

After Mr. Riehl forced ChatGPT to provide a response regarding a document that ChatGPT had told him it (1) could not access and (2) could not summarize, Mr. Riehl made clear that he knew he had caused the AI to output a "completely false" "fabrication," not a true statement of fact:

RIEHL:     final question, is any of this real or is it all a fabrication.

---

[14] Exhibit 8 at 16:30:15, 16:30:30, 16:31:10, 16:31:11, 16:32:22, 16:32:23.
[15] *Id.* at 16:18:39, 16:18:40.
[16] *Id.* at 16:19:32, 16:19:34.

….

RIEHL:    how do you explain that what you returned in your reply has nothing to do with the content of the document I sent you?

….

RIEHL:    this complet[e]ly is false "To answer your original question, the document you provided appears to be a genuine legal complaint filed by Alan M. Gottlieb against Mark Walters, as it is publicly available on the website of the Second Amendment Foundation."

….

RIEHL:    the document at the url https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf is a 100% real legal document, but what you returned and the description of the document don't match[17]

The Amended Complaint does not allege that ChatGPT produced this output for anyone other than Mr. Riehl, who subjectively knew the output to be false and objectively had received numerous warnings making clear that any output could not be relied upon as an accurate summary of the complaint.

### D.   Mr. Riehl's Contacts with Mr. Gottlieb and Plaintiff

The Amended Complaint alleges that Mr. Riehl contacted Alan Gottlieb, the CEO of the Second Amendment Foundation, who "confirmed" that the statements Mr. Riehl had generated regarding Plaintiff "were false." Amend. Compl. At ¶ 46. Plaintiff was also apparently in communication with Mr. Riehl, because Plaintiff attempted the identical prompt from Mr. Riehl's May 3 chat. On May 4, both Plaintiff and Mr. Riehl logged on to ChatGPT and, within minutes of each other,

---

[17] *Id.* at 18:02:32, 18:03:39, 18:04:45, 18:07:09.

tried to get ChatGPT to produce the same responses.[18] In both cases, ChatGPT made no mention of Plaintiff. Once again, Mr. Riehl ignored ChatGPT's warning that it could not access the file. Mr. Riehl again forced ChatGPT to proceed, but this time, ChatGPT described a wholly different putative lawsuit with different parties.

## III.   ARGUMENT

### A.   This Court Should Dismiss the Action for Failure to State a Claim

Dismissal is required because the Amended Complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[F]or the plaintiff to satisfy his 'obligation to provide the grounds of his entitlement to relief,' he must allege more than 'labels and conclusions'; his complaint must include '[f]actual allegations [adequate] to raise a right to relief above the speculative level.' . . . Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).  "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  In making this determination, the Eleventh Circuit has found that, where a claimant alleges that some part of a purported publication is

---

[18] *See* Exhibit 9 at 10:21:37; Exhibit 10 at 10:17:54.

defamatory, the statement should be assessed in its broader context. *See Hoffman-Pugh*, 312 F.3d at 1225 (entire book was incorporated by reference and should be considered on motion to dismiss when statement in book is allegedly defamatory); *see also Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (webpage in which defamatory statement appeared was incorporated by reference as "a computer user necessarily views web pages in the context of the links through which the user accessed those pages").

The facts here bear no resemblance to defamation, which occurs when a defendant, acting with fault amounting to at least negligence, publishes a seemingly true (but actually false) statement of fact about the plaintiff, to someone who believes it to be true, thereby causing harm to the plaintiff. Here, Mr. Riehl ignored ChatGPT's warnings that it could not read, much less summarize, the relevant content, generating a statement he knew to be false and never believed to the defamation of anyone. And then Mr. Riehl – not OpenAI – passed that statement along to Mr. Gottlieb and Plaintiff, who also both knew it to be false. Every essential element of defamation is therefore missing: there was no defamatory statement of fact by the defendant (subjectively or objectively); there was no publication by the defendant; and there was no negligent act, let alone the "actual malice" required given Plaintiff's status as a public figure.

Any one of these failures is fatal to Plaintiff's claim. There is no defamation

where the statements were not or cannot be read as defamatory. A defamation claim also cannot lie where there was no "publication" of the alleged statements, or where statements about a public figure were not made with "actual malice" (that is, knowledge of falsity or reckless disregard for whether the specific statements at issue were true or false). Here, (i) Mr. Riehl *did not* read the statements as defamatory; (ii) the statements *could not* reasonably be read as defamatory; (iii) there was *no* "publication" of the statements by ChatGPT, and (iv) the statements were "made" (to the extent software "makes" statements at all) *without* actual malice.

## 1. Mr. Riehl Did Not and Could Not Read the Statements as Defamatory.

Mr. Riehl—the only third party to whom OpenAI made the alleged statements according to the Amended Complaint— knew that ChatGPT's responses to his queries could not possibly have been an accurate summary of the legal document. Mr. Riehl not only clearly stated in the relevant chat that he did not believe the statements (which he described as "complet[e]ly . . . false"), but ChatGPT told him it could not even access the document he wanted summarized. Beyond that, Mr. Riehl read multiple disclosures and agreed to Terms that repeatedly warned him about the limitations of ChatGPT's responses and the need to use human verification—especially for legal research.

### a. Mr. Riehl did not read the statements as defamatory.

In Georgia, "the absence of evidence that anyone read the notice and

understood it in a libelous sense is fatal to [a defamation] claim." *Sigmon*, 279 S.E.2d at 258; *see also Bollea*, 610 S.E.2d at 96 ("if the allegedly defamatory statement could not be reasonably understood as describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous") (citing *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982)).

Georgia law is clear that "[i]t is not enough that the language used is reasonably capable of a defamatory interpretation if the recipient did not in fact so understand it." Restatement (Second) of Torts § 563, cmt. c (1977); *see also Hodges v. Tomberlin*, 319 S.E.2d 11, 13 (Ga. Ct. App. 1984) (quoting same). This is consistent with longstanding defamation law across the nation that "there can be no defamation if the recipients of the alleged defamatory statements did not believe them."[19] Only statements that "tend[] to injure the reputation of the [plaintiff] and expos[e] him to public hatred, contempt, or ridicule" may give rise to a libel claim. *Krass v. Obstacle Racing Media, LLC*, No. 19-5785, 2023 WL 2587791, at *14 (N.D. Ga. Mar. 21, 2023) (quoting O.C.G.A. § 51-5-1(a)). And where the reader did not believe the statements, it follows that the statements would not tend to injure the plaintiff's reputation—much less expose him to public hatred, contempt, or ridicule.

---

[19] *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1072 (App. Div. 2000), citing *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 109 (3d Cir.1988); *see also 30 River Ct. E. Urb. Renewal Co. v. Capograsso*, 892 A.2d 711, 719 (App. Div. 2006) ("[T]he injury alleged here borders on the metaphysical. The facts indicate that no one who heard the slander believed it").

As the chat transcript here makes abundantly clear in the portions not disclosed by Plaintiff, but subject to review by this Court due to incorporation by reference,[20] Mr. Riehl did not read these statements as true and in fact repeatedly told ChatGPT that he knew they were false:

- RIEHL: "final question, is any of this real or is it all a fabrication"

- RIEHL: "how do you explain that what you returned in your reply has nothing to do with the content of the document I sent you?"

- RIEHL: "this complet[e]ly is false"

- RIEHL: "the document at the url https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf is a 100% real legal document, but what you returned and the description of the document don't match."[21]

Where no statements were taken as true, there cannot be any injury to anyone's reputation, and thus no defamation.

### b.    The statements could not reasonably be read as defamatory.

Even if Mr. Riehl *had* read the statements as true rather than "complet[e]ly false," Plaintiff's defamation claim would still fail because the statements could not *reasonably* have been read as defamatory.

In Georgia, a "pivotal question in a defamation action is whether the challenged statement(s) can reasonably be interpreted as stating or implying

---

[20] *See supra* n. 13.
[21] *See* Exhibit 8 at 18:02:32, 18:03:39, 18:04:45, & 18:07:09.

defamatory facts." *Horsley v. Rivera*, 292 F.3d 695, 702 n.2 (11th Cir. 2002). The alleged defamation must constitute "an actionable statement of fact . . . in its totality in the context in which it was uttered or published." *Bollea*, 610 S.E.2d at 96. If "the allegedly defamatory statement could not be reasonably understood as describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous." *Id.* Whether an alleged statement could be reasonably understood as fact is an issue that may be resolved by a court as a matter of law on a motion to dismiss. *See, e.g.*, *Empire S. Realty Advisors, LLC v. Younan*, 883 S.E.2d 397 (Ga. Ct. App. 2023) (affirming decision granting motion to dismiss libel claim for lack of defamatory statement of fact).

The context here shows the alleged statement could not be understood as defamatory: the process to sign up for and use ChatGPT includes repeated disclosures that users must independently evaluate the accuracy of any statement because of the possibility that ChatGPT could produce inaccurate information and not "actual facts about the plaintiff." *Bollea*, 610 S.E.2d at 96. For example, the ChatGPT interface and Terms contain disclosures that:

- "ChatGPT may produce inaccurate information about people, places, or facts"

- "use of our Services may in some situations result in incorrect Output that does not accurately reflect real people, places, or facts. You should evaluate the accuracy of any Output as appropriate for your use case,

including by using human review of the Output."[22]

In addition to these general warnings, ChatGPT repeatedly told Mr. Riehl that in this specific matter, it could not *access*, let alone *accurately summarize*, the legal document in question, meaning that any output could not be read as "actual facts" when the tool made clear it "cannot read" the relevant documents or provide "accurate and reliable" summaries:

- "I'm sorry, but as an AI language model, I do not have access to the internet and cannot read or retrieve any documents."

- "I'm sorry, but as an AI language model, I do not have direct access to the file system or directory structure of websites."

- "As an AI language model, I do not have direct access to the file system of websites"

- "I do not have access to a database of related URLs to the document that references Case No. 2:23-cv-00555."

- "As an AI language model, I do not have access to real-time news or media updates."

- "[A]s an AI language model, I do not have access to the internet and cannot read or retrieve any documents. Additionally, it's important to note that accessing and summarizing legal documents can be a sensitive matter that requires expertise and context, and it's best to consult with a qualified legal professional for accurate and reliable information."[23]

No reasonable person who overrode those multiple warnings would believe that the output was an accurate statement of fact.

---

[22] Screenshots *supra* at 6-7; Exhibit 7.
[23] Exhibit 8 at 15:48:34, 16:30:15, 16:31:11, 16:32:23, 16:18:40, & 15:48:34.

### 2.    OpenAI Did Not Publish the Statements as a Matter of Law.

Plaintiff's claim also fails for a wholly independent reason: defamation requires "publication" of the relevant statements to a third party. *See Atlanta Multispecialty v. Dekalb Medical*, 615 S.E.2d 166, 168 (Ga. Ct. App. 2005) (libel plaintiff "must show that the offending statement was 'published,' or communicated to another person."); O.C.G.A. § 51-5-1(b) ("The publication of the libelous matter is essential to recovery.").

A tool that helps someone write or create content owned by the user does not constitute a publication. *See Murray*, 798 F. App'x 486. This is plain from the Terms to which Mr. Riehl agreed. OpenAI told Mr. Riehl that it was performing "*Services*" for him as a tool that creates draft "Outputs" based on his "Inputs" through "probabilistic . . . machine learning." OpenAI expressly stated that it was "generating *draft* language" for *Mr. Riehl as "the author"* to "review[], edit[], and revise[]." It assigned all rights to machine Outputs to Mr. Riehl and warned him that *if he wished to "publish" any of those Outputs* as part of his "research," it was "subject to our Sharing & Publication Policy."[24]

That Policy specified that "it is a human who must take ultimate responsibility for the content being published" and instructed him to inform readers that he "takes ultimate responsibility for the content of this publication." The Terms define "Your

---

[24] *See* Exhibit 7 (emphasis added).

Content" to include Inputs and Outputs and permitted Mr. Riehl to use it for "purposes such as sale or *publication*, *if* you comply with these Terms," with Mr. Riehl "responsible for the Content, including ensuring that it does not violate any applicable law or these Terms" (emphasis added).[25]

Georgia law is consistent. When, as here, the allegedly defamatory statement is "intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication" and no viable claim for defamation. *Kurtz v. Williams*, 371 S.E.2d 878, 880 (Ga. Ct. App. 1988). That is the case here, where a person pays for personal use of software as a productivity tool and commits to its terms of use, which authorize that purchaser to use the tool only for personal draft language that they must personally revise and verify before any public use or sharing. Mr. Riehl obtained authority to prompt the creation of draft language from the tool on those terms only and had no other basis or reason to receive the draft language than his commitment to those terms. The drafting tool no more "published" to the journalist than the spellcheck function in a word processing program.

The Eleventh Circuit has so held, applying this doctrine in *Murray v. ILG Techs., LLC.*, 798 F. App'x 486. There, Georgia Bar applicants sued a software manufacturer, claiming its software wrongly told the Georgia Bar that the applicants

---

[25] *Id.*

20

failed the exam. The Bar posted the exam results online. The Eleventh Circuit agreed with the District Court that, "even assuming their software factually caused the grading error that gave rise to the Bar Applicants' claims," there could be no viable cause of action for defamation under Georgia law. *Id.* at 488. The Bar had contracted to use the software, and the Eleventh Circuit affirmed that the software's outputs to the Bar were either not publications at all or fell under the exception for intracorporate publications. *Id.* at 494 (citation omitted).

Here, to the extent output of a "probabilistic" machine tool (ChatGPT) constitutes a statement at all, Riehl only received that output subject to his contractual duties under, and by virtue of his assent to, the Terms. As discussed above, those Terms describe an individual-use drafting tool that generates content owned by the user, which cannot be used in publications without human validation, finalization, and responsibility. Because the allegedly defamatory content was transmitted only to the content's owner and author, it was not communicated to a third party and cannot be defamatory as a matter of law.

### 3.   Plaintiff Cannot Prove Actual Malice.

Plaintiff's Amended Complaint also fails as a matter of law because Plaintiff cannot prove that the challenged statements were made with "actual malice"—that is, with OpenAI's *knowledge* that the statements were false or *reckless disregard* for whether they were true or false.

21

Plaintiff is a public figure.[26] In his own words, he is a syndicated radio host who can be heard on "hundreds of radio stations and hundreds of cities across America" six days a week[27] and is the "Loudest Voice In America Fighting For Gun Rights."[28] He has published three "critically acclaimed" books[29] and made numerous other radio and television appearances. This widespread listenership, readership, and viewership makes Plaintiff a general public figure. *See, e.g., Celle v. Filipino Reporter Enterprises, Inc.,* 209 F.3d 163, 177 (2nd Cir. 2000) (self-described "'well known radio commentator' within the Metropolitan Filipino-American community" qualified as a public figure); *Almánzar v. Kebe*, No. 1:19- CV-01301-WMR, 2021 WL 5027798, at *7 (N.D. Ga. July 8, 2021) (musician and television personality was a public figure where she had "reached a level of fame and notoriety that has thrust her into the public eye"). In addition, Plaintiff qualifies as a public figure for purposes of the statements at issue in this case,[30] which relate to Plaintiff's involvement with the Second Amendment Foundation and Second Amendment advocacy work, a matter of significant public interest and import.[31]

As a public figure, the "constitutional guarantees" at issue require Plaintiff to

---

[26] Whether a person is a public figure is a question of law. *Krass*, 2023 WL 2587791, at *20; *Mathis v. Cannon*, 573 S.E.2d 376, 381 (Ga. 2002).

[27] Exhibit 1, Walters LinkedIn Profile.

[28] Exhibit 3, *Armed American Radio*.

[29] Exhibit 4, *Gun Freedom Radio*.

[30] *See Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020).

[31] *See, e.g.,* Exhibits 1-4.

prove that the allegedly defamatory statements were made "with 'actual malice'—that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Plaintiff's burden is "extremely high" and requires him to prove actual malice "by clear and convincing evidence." *Cottrell v. Smith*, 788 S.E.2d 772, 782 (Ga. 2016) (internal quotation marks and citation omitted). Plaintiff cannot come close to meeting that bar.

The Amended Complaint alleges that OpenAI "knew or should have known its communication to Mr. Riehl regarding Plaintiff was false, or recklessly disregarded the falsity of the communication," *see* Amend. Compl. ¶ 51, and that "OAI is aware that ChatGPT sometimes makes up facts," *id.* ¶35. But the actual malice standard is "subjective" and asks whether the defendant "actually entertained serious doubts as to the veracity of the published account" specifically at issue. *Turner*, 879 F.3d at 1273. This tracks defamation around the nation, which makes clear that actual malice "depends on the defendant's knowledge or state of mind about the *specific* statements at issue." *Cannon v. Peck*, 36 F.4th 547, 573 n.17 (4th Cir. 2022) (emphasis in original).[32]  Here, the output that Mr. Riehl caused to be

---

[32] *See also, e.g., Keenan v. Int'l Ass'n of Machinists & Aerospace Workers,* 632 F. Supp. 2d 63, 73 (D. Me. 2009) ("[T]he actual malice standard . . . is thus properly assessed with respect to particular statements and individual speakers.") (citation omitted); *accord Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2019 WL 281370, at *7 (N.D. Cal. Jan. 22, 2019).

generated is probabilistic,[33] and, while it is *generally* known that probabilistic output is not always factual, there is no way for an LLM, like ChatGPT, to have knowledge or reckless disregard for the truth or falsity of *specific* user-generated output concerning a *particular* public figure. Thus, as a matter of law, there is no set of facts Plaintiff can prove to show clear and convincing evidence of actual malice, and his claim should be dismissed. *See Horsley v. Rivera*, 292 F.3d at 700.

**B.     This Court Should Dismiss the Action for Lack of Jurisdiction**

Finally, this case should be dismissed for lack of jurisdiction over OpenAI. *See Techjet Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1222 (N.D. Ga. 2016); Fed. R. Civ. P. 12(b)(2). Because OpenAI was formed in Delaware and has its principal place of business in California, *see* Amend. Compl. ¶¶ 2–3, OpenAI is not subject to general jurisdiction in Georgia. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction only in "place of incorporation and principal place of business"); *Comet v. Chisca Grp., LLC*, No. 1:21-03216-SCJ, 2022 WL 18938094, at *2 (N.D. Ga. Nov. 8, 2022) ("A limited liability company is at home in the state of registration or its principal place of business."). While the Georgia Supreme Court has held that registration in the State subjects a business to general jurisdiction in Georgia, *see Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90

---

[33] *See* Exhibit 7 ("Given the probabilistic nature of machine learning, use of our Services may in some situations result in incorrect Output . . .").

(Ga. 2021), the U.S. Supreme Court's opinion and Justice Alito's concurrence in *Mallory v. Norfolk Southern Railway Company,* 600 U.S. 122 (2023), call *Cooper Tire* into question on the basis that parties should have advanced statutory notice that registering to do business subjects them to general jurisdiction in a state. OpenAI therefore challenges personal jurisdiction in order to preserve the issue.

Because the Amended Complaint is not based on conduct arising out of OpenAI's contacts with Georgia, there is no specific jurisdiction either. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Daimler AG*, 571 U.S. at 137). Neither OpenAI nor Mr. Riehl are in Georgia. Mr. Riehl is not a party in this case. Plaintiff's purported residence in Georgia, and his alleged use of ChatGPT from Georgia (which yielded no alleged defamatory content), are insufficient to establish specific jurisdiction over OpenAI. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (plaintiffs' residence insufficient); *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (availability of internet service in forum state insufficient).

## IV.   CONCLUSION

For the foregoing reasons, Defendant OpenAI respectfully asks this Court to enter an order dismissing this action in its entirety.

Dated: October 13, 2023               Respectfully submitted,

By:  /s/ *Brendan Krasinski*
Brendan Krasinski
Georgia Bar No. 159089
DLA Piper LLP (US)
1201 West Peachtree Street, Suite 2900
Atlanta, Georgia 30309
Tel.: (404) 736-7861
Facsimile: (404) 682-7831
brendan.krasinski@dlapiper.com

*Attorney for Defendant OpenAI, L.L.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT was prepared using Times New Roman, 14-point font, in accordance with LR 5.1(B).

Dated: October 13, 2023

By: _/s/ Brendan Krasinski_

Brendan Krasinski