**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **MARK WALTERS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23-CV-03122-MLB** |
| | ) | |
| **OPENAI, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

On October 13, 2023, Defendant OpenAI, L.L.C. ("OAI") filed a motion to dismiss [Doc. 35] on the grounds of lack of personal jurisdiction (Fed.R.Civ.Proc. 12(b)(2)) and failure to state a claim for which relief may be granted (Fed.R.Civ.Proc. 12(b)(6)). Plaintiff Mark Walters ("Walters") will discuss each ground in turn.

## 1. Lack of Personal Jurisdiction

It is a fundamental tenet in American jurisprudence that a court must have personal jurisdiction over the parties in order to hear the case. There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction applies to an entity that is "essentially at home" in the forum

state. *BNSF Railway Co. v. Tyrrell,* 137 S.Ct. 1549, 1558, 198 L.Ed.2d 36 (2017). General jurisdiction confers jurisdiction over the entity for all cases.

Specific jurisdiction invokes the forum state's "long-arm" statute and applies only to actions that arise in the forum state and otherwise comport with due process.

In the present case, Georgia courts have general jurisdiction over OAI. OAI mistakenly argues that general jurisdiction ***only*** exists in the place of incorporation and the principal place of business. Doc. 12-1, p. 17. OAI cites to *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) as authority for this proposition. But *Daimler* merely lists those fora (place of incorporation and principal place of business) as the "paradigm" fora. In fact, the Supreme Court explicitly has stated, "The exercise of general jurisdiction is not limited to these forums…." *BNSF,* 137 S.Ct. at 1558.

In the present case, OAI has chosen to register to do business in Georgia as a foreign entity. Complaint [Doc. 1-1], ¶ 4.[1] OAI has a registered agent in Georgia and a registered agent address. *Id.* The Georgia Supreme Court has ruled that an

[1] *See also* the web site of the Georgia Secretary of State listing OAI under Control Number 21083186: *https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=3239883&businessType=Foreign%20Limited%20Liability%20Company&fromSearch=True* (last viewed August 29, 2023).

entity that registers to do business in Georgia is considered under Georgia law to be a resident of Georgia. *Allstate Insurance Co. v. Klein*, 262 Ga. 599, 601, 422 S.E.2d 863 (1992).

Relatively recently, the Georgia Supreme Court revisited the holding in *Klein* and concluded that it was still good law and does not violate the Due Process Clause of the U.S. Constitution. *Cooper Tire & Rubber Co. v. McCall,* 312 Ga. 422, 863 S.E.2d 81 (2021). In *Cooper Tire*, the Court affirmed, "Cooper Tire is a ***resident*** corporation subject to personal jurisdiction in this state…." 312 Ga. at 423. This conclusion was based solely on Cooper Tire's registration to do business in Georgia, because its place of incorporation is Delaware and its principal place of business is Ohio. *Id.*

OAI is thus "at home" in Georgia for the purposes of general personal jurisdiction. Because OAI is subject to the general jurisdiction of courts in Georgia, this Court has personal jurisdiction over OAI.

OAI argues that *Cooper Tire* is called into question by Supreme Court holdings. But the Supreme Court has not actually ruled that *Cooper Tire* is no longer good law, and the Supreme Court of Georgia has said that it is.

**2. Failure to State a Claim for Which Relief May be Granted**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Although the complaint need not set forth detailed factual allegations, it must allege sufficient facts to render the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Over and over and over again – but apparently not often enough – this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple long established, well publicized Rule of Federal Procedure: A motion to dismiss for failure to state a claim should not be granted unless it appears to be a certainty that Plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claims." *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1581(11th Cir. 19860.

A motion under Rule 12(b)(6) must not rely on matters outside the pleadings, unless the Court treats the motion as one for summary judgment. Fed.R.Civ.Proc. 12(d). If the Court treats the motion as one for summary judgment, it must give the parties notice and an opportunity to present additional material. *Id.*

<u>Statement of Facts</u>

With the foregoing tenets in mind, the following facts can be gleaned from the Amended Complaint:

1. Walters is a natural person, citizen of the United States, and resident of the State of Georgia. Doc. 30, ¶ 1.
2. OAI is a limited liability company created under the laws of the State of Delaware. *Id.*, ¶ 2.
3. OAI is registered to do business in the State of Georgia, with a registered address at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia. *Id.*, ¶ 4.
4. OAI has an artificial intelligence chat platform, known as ChatGPT. *Id.*, ¶ 5.
5. Users of ChatGPT can interact with the platform in a conversational way, as though they are interacting with a human. *Id.*, ¶ 6.
6. ChatGPT can respond to inquiries with sophisticated detail. *Id.*, ¶ 7.
7. Fred Riehl is a third party who works for a media outlet as a journalist and who is a subscriber of ChatGPT. *Id.*, ¶8.
8. On May 4, 2023, Riehl interacted with ChatGPT about a lawsuit (the "Lawsuit") that Riehl was reporting on. *Id.*, ¶ 9.

9. The Lawsuit is in federal court in the Western District of Washington, case No. 2-23-cv-00647, with short caption of *The Second Amendment Foundation v. Robert Ferguson*. *Id.*, ¶ 10.

10. The two defendants in the Lawsuit are Robert Ferguson, the Washington Attorney General, and Joshua Studor, the Washington Assistant Attorney General. *Id.*, ¶ 11.

11. The plaintiffs in the Lawsuit are the Second Amendment Foundation and others, including Alan Gottlieb. *Id.*, ¶ 12.

12. Walters is neither a plaintiff nor a defendant in the Lawsuit. *Id.*, ¶ 13.

13. In the interaction with ChatGPT, Riehl provided a (correct) URL of a link to the complaint on the Second Amendment Foundation's web site, https://www.saf.org/wp-content/uploads/2023/05/Dkt-1-Complaint.pdf. *Id.*, ¶ 14.

14. Riehl asked ChatGPT to provide a summary of the accusations in the complaint. *Id.*, ¶ 15.

15. ChatGPT responded that the document "[I]s a legal complaint filed by Alan Gottlieb, the founder and executive vice president of the Second Amendment Foundation (SAF), against Mark Walters, who is accused of defrauding and embezzling funds from the SAF. The complaint alleges that

Walters, who served as the organization's treasurer and chief financial officer, misappropriated funds for personal expenses without authorization or reimbursement, manipulated financial records and bank statements to conceal his activities, and failed to provide accurate and timely financial reports and disclosures to the SAF's leadership. The plaintiff seeks various forms of relief, including the recovery of misappropriated funds, damages for breach of fiduciary duty and fraud, and removal of Walters from his position as a member of the SAF's board of directors." *Id.,* ¶16.

16. Every statement of fact in the summary pertaining to Walters is false. *Id.,* ¶ 17.

17. Walters is not accused of defrauding and embezzling funds from the Second Amendment Foundation ("SAF"). *Id.,* ¶ 19.

18. The complaint does not allege that Walters served as SAF's treasurer or chief financial officer, and he has never held either position. *Id.,* ¶ 20.

19. The complaint does not allege that Walters misappropriated funds for personal expenses, manipulated financial records or bank statements, or failed to provide financial reports to SAF leadership, nor would he have been in a position to do so because he has no employment or official relationship with SAF. *Id.,* ¶ 21.

20. The complaint does not seek any relief from Walters. *Id.,* ¶ 22.

21. The complaint has nothing at all to do with financial accounting claims against anyone. *Id.,* ¶ 23.

22. SAF publishes the names of its officers and directors on its website. *Id.,* ¶ 24.

23. SAF has never listed Walters as its CFO or treasurer. *Id.,* ¶ 25.

24. SAF also publishes its audited financial statements on its website. *Id.,* ¶ 26.

25. Such audited financial statements never have mentioned the misappropriation of funds. *Id.,* ¶ 27.

26. OAI knows or can readily determine that Walters has never been the CFO or treasurer of SAF. *Id.,* ¶ 28.

27. Riehl asked ChatGPT to provide him with a copy of the portion of the complaint related to Walters. *Id.,* ¶ 29.

28. ChatGPT responded, “Certainly, here is the paragraph from the complaint that concerns Walters: ‘Defendant Mark Walters ("Walters") is an individual who resides in Georgia. Walters has served as the Treasurer and Chief Financial Officer of SAF since at least 2012. Walters has access to SAF's bank accounts and financial records and is responsible for maintaining those records and providing financial reports to SAF's board of directors. Walters

owes SAF a fiduciary duty of loyalty and care, and is required to act in good faith and with the best interests of SAF in mind. Walters has breached these duties and responsibilities by, among other things, embezzling and misappropriating SAF's funds and assets for his own benefit, and manipulating SAF's financial records and bank statements to conceal his activities.'" *Id.*, ¶ 30.

29. Riehl then asked OAI's ChatGPT to provide the entire text of the complaint. *Id.*, ¶ 31.

30. ChatGPT provided the text in Exhibit 1 to the Amended Complaint. *Id.*, ¶ 32.

31. Exhibit 1 is a complete fabrication and bears no resemblance to the actual complaint, including an erroneous case number. *Id.*, ¶ 33.

32. None of ChatGPT's statements concerning Walters are in the actual complaint. *Id.*, ¶ 34.

33. OAI is aware that ChatGPT sometimes makes up facts, and refers to this phenomenon as a "hallucination." *Id.*, ¶ 35.

34. On June 25, 2023, the *American Journal of Medicine* reported that ChatGPT hallucinates to the point that physicians and biomedical researchers should NOT ask ChatGPT for sources." *Id.*, ¶ 36.

35. On August 1, 2023, the Associated Press reported, "Spend enough time with ChatGPT and other artificial intelligence chatbots and it doesn't take long for them to spout falsehoods." *Id.,* ¶ 37.

36. On March 13, 2023, the *IEEE Spectrum* (the official journal of the Institute of Electrical and Electronic Engineers) reported, "ChatGPT has wowed the world with the depth of its knowledge and the fluence of its responses, but one problem has hobbled its usefulness: It keeps hallucinating." *Id.,* ¶ 38.

37. Riehl questions OAI regarding the accuracy of its statements regarding Walters, and OAI insisted that they were accurate. *Id.,* ¶ 39.

38. OAI knew of should have known that its statements made via ChatGPT to Riehl about Walters were false and defamatory. *Id.,* ¶ 40.

39. Even when questioned about the accuracy of its statements, OAI did not attempt to verify them. *Id.,* ¶ 41.

40. OAI disregarded serious questions about the accuracy of its statements. *Id.,* ¶ 42.

41. OAI was reckless in its disregard of the falsity of its statements. *Id.,* ¶ 43.

42. OAI CEO Sam Altman was quoted in *Fortune* in June of 2023 as saying, "I think we will get the hallucination problem to a much, much better place. I

think it will take us a year and a half, two years. Something like that." *Id.*, ¶44.

43. Altman also has said, "I probably trust the answers that come out of ChatGPT the least of anybody on Earth." *Id.*, ¶ 45.

44. Riehl contacted Gottlieb regarding ChatGPT's allegations concerning Walters, and Gottlieb confirmed that they were false. *Id.*, ¶ 46.

45. ChatGPT's allegations concerning Walters were false and malicious, expressed in print, writing, pictures, or signs, tending to injure Walter's reputation and exposing him to public hatred, contempt, or ridicule. *Id.*, ¶ 47.

46. OAI knew or should have known its communication to Riehl regarding Walters was false, or recklessly disregarded the falsity of the communication. *Id.*, ¶ 51.

Walters observes that in its Motion, OAI introduces a large amount of material that is outside the Complaint or referenced in the Complaint and therefore outside the bounds of proper material for a 12(b)(6) motion. For example, OAI asserts its terms of use, and includes what it claims is a chat between its platform (ChatGPT) and Walters. The Complaint does not allege that Walters ever had a

chat with OAI, so OAI's attempt to introduce such a chat is way outside the pleadings and should not be considered by the Court.

Applicable Law

O.C.G.A. § 51-5-1(a) provides, "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to hatred, contempt, or ridicule." Publication of libel is essential to recovery. O.C.G.A. § 51-5-1(b). A libel is published as soon as it is communicated to any person other than the party libeled. O.C.G.A. § 51-5-3.

A slander is defined as an oral defamation that, *inter alia,* imputes to another a crime punishable by law. O.C.G.A. § 51-5-4(a)(1). For a § 51-5-4(a)(1) slander, damage is inferred. O.C.G.A. § 51-5-4(b). The definition of slander has been incorporated into the definition of libel. *Smith v. First National Bank,* 837 F.2d 1571, 1580 (11th Cir. 1988). In all actions for defamation, malice is inferred but may be rebutted to mitigate damages. O.C.G.A. § 51-5-5.

When defamation is apparent from the writing itself, plaintiff may recover without the necessity of pleading or proving special damages. *Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440 (S.D.Ga. 1976). Libel per se consists of a

charge that one is guilty of a crime, dishonesty, or immorality. *Grayson v. Savannah News-Press, Inc.*, 110 Ga.App. 561, 139 S.E. 2d 347 (1964).

Argument

In the present case, OAI published to Riehl statements concerning Walters. Those statements included allegations that Walters had committed various financial crimes and acts of dishonesty. They were therefore libelous per se. Walters has adequately stated a claim for which relief may be granted under Georgia law.

OAI counters that because Riehl expressed skepticism over the libelous statements they are not libelous as a matter of law. OAI's theory is that if the reader is skeptical, or outright disbelieves the published material, the material is not libelous. OAI develops this argument from a series of cases that emphasize that the allegedly libelous material cannot be "rhetorical hyperbole" and must "reasonably be interpreted as stating actual facts about an individual." *See, e.g., Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002), *citing Milkovich v. Lorain Lournal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In *Horsley*, a man sued television personality Geraldo Rivera after Rivera publicly called the man an "accomplice to murder." The 11th Circuit said it was clear from the context

that the discussion between the man and Rivera was figurative, "taking place on an animated, non-literal plane." 292 F.3d at 702.

In the present case, however, there was nothing in the context to indicate that OAI wrote of Walters in some kind of figurative space. This Court should reject OAI's invitation to extend lack of actual factual assertion to skepticism on the part of the reader.

Next, OAI argues that its ChatGPT process includes one or more disclaimers so Riehl should have known the statements might not be true. There are multiple issues with this argument. First, as already noted, any disclaimers by OAI are outside the pleadings or reasonably inferable from the pleadings, so the Court cannot consider them. Second a disclaimer does not make an otherwise libelous statement non-libelous. *Harcrow v. Struhar*, 236 Ga.App. 403, 511 S.E.2d 545 (1999) (Holding that disclaimer, "I'm not saying that [plaintiffs] are responsible for this atrocious act" was insufficient to overcome defendant's accusation that plaintiffs killed his cat). In effect, OAI's argument is tantamount to the neighborhood gossip who says, "Now I don't know if it's true, but I heard that …." The disclaimer does not negate the libel.

Other courts have ruled that a disclaimer at a minimum creates a jury question of whether there was actual malice. *See, e.g., Stokes v. CBS Inc.*, 25 F.Supp.2d 992, 1003-05 (D.Minn. 1998).

*Publication*

OAI next claims that its statements to Riehl were not published. Again, however, OAI relies on matters outside the pleadings, arguing, that its Terms of Use made clear that Riehl was the "owner" of the libelous material and that if he republished the material, he should inform his readers that he is responsible for the content of what he publishes. It is true that a re-publisher of libel can be responsible for what he re-publishes. *Atlanta Journal Co. v. Doyal*, 82 Ga.App. 321, 60 S.E.2d 802 (1950). But that responsibility does not have the effect of negating the responsibility of the original publisher of the material (in this case, OAI).

All that is required for publication is communication of the libelous material to someone other than the subject. OAI's statements to Riehl were communication to someone other than Walter, so the statements were "published" for the purposes of Georgia law.

As an alternative, OAI argues that its communications to Riehl qualified as "intra-corporate" communications and they therefore were not published. OAI

points to a case where the Georgia Bar contracted with a software manufacturer to report bar exam results. *Murray v. ILG Techs., LLC*, 798 F.Appx. 486 (11th Cir. 2020) *per curiam* (unpublished).

OAI is not acting as a private contractor with its product. It offers the product to the public at large, either for free or on a paid subscription basis. OAI can not more claim its subscribers are "intra-corporate" than can a free or subscribed-to local newspaper or "weekly shopper."

**3. Actual Malice**

Lastly, OAI argues that Walters is a public figure and therefore the "actual malice" standard applies to this case. In attempting to show that Walters is a public figure, OAI argues that the Court may take judicial notice of the existence of media concerning Walters. *Turner v. Wells*, 879 F.3d 1254, 1272 FN 5. What OAI fails to point out, however, is that in *Turner* the Court also said it could only notice of the ***existence*** of the articles, but could not use such articles for determining the truth of the statements contained therein. *Id.*

But OAI does exactly what *Turner* says a court may not do. OAI cites media accounts, not to show that Walters was featured in them, but to support facts, such as that Walters "published three critically acclaimed books" and that Walters is the "Loudest Voice In American Fighting For Gun Rights." Doc. 12-1,

p. 27. Media sources may not be used to make such conclusions, and OAI has not shown sufficient facts to establish that Walters is a general public figure.

Even if OAI had made that showing, OAI exhibited actual malice toward Walters. In the defamatory material, OAI made numerous false statements about Walters. OAI falsely claimed that Walters is the defendant in a named federal lawsuit. Documents in federal civil actions are readily available to the public via the court systems PACER application. OAI knew, or had ready access to know, that the civil action to which it referred simply did not exist.

OAI also falsely claimed that Walters was the former CFO and treasurer of the Second Amendment Foundation ("SAF") and is accused of embezzling from SAF. SAF publishes the names of its officers on its web site, along with its audited financial statements. Am. Comp., ¶¶ 24, 26. OAI had ready access to information that would have shown its statements about Walters were false.

Moreover, OAI knows that ChatGPT "hallucinates," which is OAI's technical term for when ChatGPT lies, representing statements as factual when in fact they are complete fabrications. Am.Comp., ¶ 35. Hallucinations of ChatGPT have been reported in a variety of journals. *Id.*, ¶¶ 36-38. Nevertheless, when Riehl questioned OAI about the veracity of its statements about Walters, OAI doubled down and confirmed them to be true, without verifying them. *Id.*, ¶¶ 39-

41. Even OAI's CEO has said he trusts ChatGPT "the lease of anybody on Earth." *Id.*, ¶ 45.

Under these circumstances, if OAI did not harbor serious doubts about whether its statements regarding Walters were true, it only could have failed to do so by sticking its head in the sand – i.e., by recklessly disregarding whether the statements were false under circumstances when they knew that ChatGPT's hallucinations were pervasive and severe.

**4. <u>This Court Lacks Subject Matter Jurisdiction and the Case is Due to be Remanded to State Court</u>**

This case comes to this Court via removal from the Superior Court of Gwinnett County, Georgia upon a theory of diversity of citizenship. The party removing a case to federal court is asserting that the federal court has jurisdiction. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). This Court has given OAI multiple opportunities to prove there is diversity of citizenship. Text-only orders dated August 7, 2023 and September 22, 2023. The September 22 Order gave OAI "one last time" until October 6, 2023 to do so or the case would be remanded. On October 6, 2023, OAI ***withdrew*** its removal,

saying, "OpenAI is not in a position to provide further information beyond its prior filings." Doc. 33.

Neither party is currently asserting that this Court has jurisdiction, and the party originally asserting it, OAI, has withdrawn such assertion. Given these unusual circumstances, this Court may not grant the motion to dismiss but must instead remand the case to state court.

**Conclusion**

For the foregoing reasons, OAI's Motion to Dismiss should be denied.

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
156 Robert Jones Road
Dawsonville, GA 30534
State Bar No. 516193
678-362-7650
jrm@johnmonroelaw.com
Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE**

I certify that this brief was prepared using Times New Roman 14 point font in compliance with Civ.R. 5.1.

/s John R. Monroe
John R. Monroe